**SO ORDERED.**

**SIGNED this 05 day of March, 2010.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re: )
 )
JOHN EDWARD WILKINSON, JR. and ) Case No. 09-41059
JENNIFER LYNNE WILKINSON, )
 )
                           Debtors. )
 )

## MEMORANDUM OPINION AND ORDER SUSTAINING TRUSTEE'S OBJECTION TO EXEMPTIONS EXCEPT AS TO PERSONAL TOOLS

This matter is before the Court on the Trustee's Objection to Debtor's Exemptions.[1] The Trustee has objected to Debtors' attempt to claim a skid loader with trailer, personal tools, and red iron for a metal building as exempt under the Kansas tools of the trade exemption found at K.S.A. 60-2304(e). Debtors contend that the property is used in Mr. Wilkinson's occupation as a stone

---

[1] Doc. 9.

crusher, and therefore the exemption is proper. The parties have submitted stipulations of fact[2] and have fully briefed this issue.

This is a core matter over which this Court has jurisdiction.[3]

**I.    FINDINGS OF FACT**

The Court makes the following findings of fact based upon the stipulations of the parties, which the Court adopts. Debtors filed their petition under Chapter 7 of the Bankruptcy Code on June 29, 2009. In connection with the filing of the petition, Debtors filed their Statement of Financial Affairs ("SOFA") and bankruptcy schedules, all of which were signed under penalty of perjury. Debtors indicated on Schedule C that they were exempting a skid loader with trailer valued at $5,000, personal tools valued at $700, and red iron for a metal building valued at $1,500, all pursuant to K.S.A. 60-2304(e), which is the Kansas tools of the trade exemption.

Debtors contend that Mr. Wilkinson has performed work as a stone-crusher for approximately five years. Approximately three years ago, he started working for Mid-States Materials, LLC ("Mid-States"). Mid-States is a private company engaged in the stone-crushing/breaking and broken stone mining business.

Mr. Wilkinson is a foreman at Mid-States. In this occupation, he uses his stone-crushing knowledge and skills to oversee and supervise new workers. He also engages in the stone-crushing work using the company's equipment and his own tools. In the winter, when Mr. Wilkinson is not working for Mid-States, he claims to operate a side stone-crushing business and uses the skid loader,

---

[2] Docs. 37 and 40 contain the stipulation and amended stipulation, Doc. 44 contains additional exhibits Debtors added after the amended stipulation was filed, to which the Trustee has now stipulated, and Doc. 48 contains three exhibits that were intended to be a part of the amended stipulation (Exhibits A, B, and C). Both counsel have agreed to rely solely on these stipulations/exhibits, and that there is no need for an evidentiary hearing.

[3] 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(B) (core proceeding).

2

trailer, red iron and tools for that purpose. Debtors indicate that the income earned from the side business is used to support the family during the winter months.

The Trustee disputes that the skid loader and red iron are regularly used as tools of the trade by Debtor in his primary job or occupation. In support, the Trustee relies upon Debtors' own sworn—and consistent— statements contained in their tax returns and in their bankruptcy schedules and SOFA. On their SOFA, Debtors indicated that Mr. Wilkinson's gross income "from employment, trade, profession or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business" for the years 2007 and 2008 was $43,850.00 and $46,538.00, respectively. A review of Mr. Wilkinson's W-2s for those tax years from Mid-States reflect the exact numbers; all the reported income was earned from his employment at Mid-States.

Debtors reported their total income from employment or operation of any business was $72,585 in 2007 and $78,071 in 2008.[4] The W-2s for those tax years attributable to Mrs. Wilkinson's employment exactly make up the difference between the total reported wages and Mr. Wilkinson's wages from Mid-States. In other words, Debtors reported no income from the stone-crushing, or any other, side business, to the IRS when they filed their 2007 and 2008 returns. Similarly, they claimed no self-employment income on their SOFA.

In section 18 of their SOFA, Debtors did indicate that they previously operated a business known as 4-J Construction. But they indicated, again, under penalty of perjury, that this business ceased operation in October 2004. Debtors also filed Schedule I, and that schedule also fails to show any income from the operation of any side business. Finally, in completing Form 22A, the "means

---

[4] Mr. Wilkinson also reported $772.00 in unemployment compensation in 2007.

3

test" form, Debtors affirmatively disclosed in Section 4 that they had $0.00 in "gross receipts" from the operation of a business, profession or farm. The only income included in Form 22A for Mr. Wilkinson, which requires debtors to reflect the average income from the six months preceding the date of filing, is the $3,272.58 Debtors indicate he earned from Mid-States. The six month period prior to the filing date would include at least the period December 29-February 28, which this Court believes constitute a majority of the "winter months" typical in Kansas.

Finally, Debtors were able to produce three receipts to show Mr. Wilkinson used the skid loader in a side business once in 2005, once in 2006, and once in 2007 (in February). Debtors produced no other receipts to show that they similarly used it any time after Mr. Wilkinson became employed at Mid-States, which was three years prior to the filing of the petition.

Additional facts will be discussed below, when necessary.

## II. ANALYSIS

Section 522(b) of the Bankruptcy Code[5] specifies that a debtor can take the exemptions enumerated in § 522(d) unless applicable state law specifically provides otherwise. Kansas has opted out of the federal exemptions, and has enacted its own set of exemptions.[6] "When determining the validity of a claimed state law exemption, bankruptcy courts look to the applicable state law."[7]

Under Kansas exemptions laws, Debtors can exempt

> The books, documents, furniture, instruments, tools, implements and equipment, the breeding stock, seed grain or growing plants stock, or the other tangible means of

---

[5] This bankruptcy was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All future statutory references are thus to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101-1532 (2005), unless otherwise specifically noted.

[6] *See In re Lampe*, 331 F.3d 750, 754 (10th Cir. 2003) (citing K.S.A. 60-2312).

[7] *In re Urban*, 262 B.R. 865, 866 (Bankr. D. Kan. 2001).

production regularly and reasonably necessary in carrying on the person's profession, trade, business or occupation in an aggregate value not to exceed $7,500.[8]

Numerous Kansas appellate decisions have addressed the requirements of the Kansas tools of the trade exemption as it relates to primary and secondary occupations.

The seminal case on this issue is *Jenkins v. McNall*.[9] In *Jenkins*, the Kansas Supreme Court set forth the following interpretation of the Kansas tools of the trade exemption: "If [a debtor] has two separate pursuits, the exempted articles must belong to his main or principal business. In other words, to the business in which he is primarily engaged."[10] The holding of *Jenkins* has been recognized by the Tenth Circuit Bankruptcy Appellate Panel in *In re Lampe*,[11] where it held "[i]n Kansas, the tools of the trade exemption applies only to the business or profession in which the debtor is 'principally engaged.'"[12]

A debtor's right to an exemption is determined as of the date the bankruptcy petition is filed.[13] "In determining whether a debtor is entitled to claim an exemption, 'the exemption laws are to be

---

[8]K.S.A. § 60-2304(e).

[9]27 Kan. 532 (1882).

[10]*Id.* at 534.

[11]278 B.R. 205 (10th Cir. B.A.P. 2002).

[12]*Id.* at 210 (citing *Seel v. Wittman*, 173 B.R. 734, 736 (D. Kan. 1994), *In re Zink,* 177 B.R. 713, 715 (Bankr. D. Kan. 1995), and *In re Massoni,* 67 B.R. 195, 196-97 (Bankr. D. Kan. 1986)).

[13]*In re Ginther*, 282 B.R. 16, 19 (Bankr. D. Kan. 2002) (citing *In re Currie,* 34 B.R. 745, 748 (D. Kan. 1983)).

5

construed liberally in favor of exemption.'"[14] "Once a debtor claims an exemption, the objecting party bears the burden of proving the exemption is not properly claimed."[15]

The Trustee raises two objections to Debtors' claimed exemptions. First, the Trustee claims that the skid loader with trailer or the red iron were not "regularly and reasonably" necessary for Debtor's business or profession. Second, the Trustee claims that because Mr. Wilkinson's primary job is with Mid-States, he cannot claim the tools of the trade exemption for property used in his side job.

### A. The Court finds the skid loader with trailer and red iron do not qualify as tools of the trade under the facts of this case.

The Court finds the Trustee has shown that the Debtors' use of the skid loader with trailer and the red iron were not "regularly and reasonably" necessary for their business or profession on the date they filed their bankruptcy petition.[16] At issue here is the conflict between Debtors' position in this contested matter, where they claim that the skid loader with trailer and red iron are regularly used by Mr. Wilkinson in the winter months to operate a side business to support their family, and the statements made under penalty of perjury both to the Internal Revenue Service and to this Court on their tax returns and bankruptcy schedules, respectively. In both filings, they claim that 100% of Mr. Wilkinson's income since at least 2007 was derived from wages from Mid-States and a small amount of unemployment compensation.

---

[14]*In re Lampe*, 331 F.3d 750, 754 (10th Cir. 2003) (quoting *In re Ginther,* 282 B.R. 16, 19 (Bankr. D. Kan. 2002)).

[15]*Id*. *See also* Fed. R. Bankr. Proc. 4003; *In re Robinson*, 295 B.R. 147, 152 (10th Cir. BAP 2003).

[16]The Trustee originally objected to Debtors' attempt to exempt Mr. Wilkinson's personal tools. However, because Debtors' have stated that those tools are used by Mr. Wilkinson at his job with Mid-States, the Trustee has agreed to withdraw her objection as to those personal tools.

6

The Debtors attempt to explain this discrepancy by indicating that they used their 2007 and 2008 tax returns to prepare the SOFA and bankruptcy schedules, and that those returns contained no income from the side business because an accountant advised them that they did not make enough money from that business to report it on their tax returns.[17] Debtors admit that they may need to file amended tax returns to correct the income they reported to the IRS, but that this Court need not concern itself with that issue—that it is an issue solely between them and the Internal Revenue Service. The Court disagrees.

The Court finds that Debtors' prior sworn statements, both in connection with the filing of their tax returns and their bankruptcy statements, operate to effectively bar Debtors from claiming that they regularly operate a side business at the relevant time. According to the Internal Revenue Code,[18] all persons who have net income in excess of $400 from self-employment are required to file tax returns reporting that income to the IRS. Therefore, even if the Court could consider the argument that a third party told them not to declare the income, Debtors' failure to report any self-employment income in 2007 and 2008 can only mean that they either earned less than $400 annually from that business or that they failed to report all of their income to the IRS.

In addition, Debtors clearly and consistently stated on their bankruptcy schedules, including their SOFA, Schedule I and Form 22A, that they received zero income from this side business. Schedule J further indicates no business expenses for the side business, either. Debtors' explanation that the income was not reported on Schedule I because they were not engaged in the side business

---

[17] As a preliminary matter, there is nothing in the stipulations to support this argument, and without a stipulation, the Court must disregard this "fact." It is inadmissible hearsay to which the parties did not stipulate, and Debtors expressly waived the opportunity to present evidence outside the stipulations.

[18] 26 U.S.C. § 6017.

7

at the actual time of filing (due to the fact that Mr. Wilkinson was working for Mid-States on the date of filing) is certainly plausible, and in the absence of other inconsistent statements, acceptable. However, that does not explain Debtors' failure to disclose the additional income on their SOFA, which requires the disclosure of the <u>gross</u> amount of all income from employment or operation of a business during the two years prior to filing.

In addition, if this side business is used regularly through the winter months, as Debtors claim, it seems likely Debtors would have realized at least some income during the six-month look back period required under the means test. Because this bankruptcy was filed at the end of June, 2009, the look back period would have included all of January and February, which are the months that most fit the description of "winter months" in Kansas.

Although Debtors now claim, when it is financially beneficial to do so, that the skid loader and steel are regularly used in a side business that generates income for them during the winter months, they have consistently stated, under oath, when it was financially beneficial to them to not disclose the business income, that they the received no money from any side business from at least February 2007 forward. Debtors cannot have it both ways.

They cannot claim that they rely on this property to generate income for their family that is needed in the winter months, while previously stating under oath that no such income existed. The Debtors have clearly taken inconsistent positions regarding this side business based upon what is most beneficial to them at the moment. By doing so, the Court finds they are now judicially estopped from advancing their current argument that the property is regularly used to generate

8

income the family relies upon during the winter.[19] Based upon the prior statements made under penalty of perjury by these Debtors on their tax returns and bankruptcy schedules, the Court finds they are barred from claiming that the skid loader with trailer and red iron were regularly used in Mr. Wilkinson's profession or occupation at the time they filed their bankruptcy petition.[20]

> **B. The Court does not need to decide whether the property, if regularly used in a side business, would have qualified as exempt under K.S.A. 60-2304(e).**

The second issue raised by the Trustee deals with the issue of whether the skid loader and red steel qualify as exempt under the Kansas tools of the trad exemption because it was used in a side business rather than Debtors' primary employment. The Court addressed this issue, under potentially distinguishing facts, in *In re Cooper*.[21] In *Cooper*, the debtor was primarily employed as a car salesman and was seeking to exempt a fishing boat and motor that he intended to use as a fishing guide in the future. Among other holdings, the Court held:

> The Kansas Supreme Court's interpretation of the tools of the trade exemption, as discussed in *Jenkins*, requires property to be used in debtor's primary job or occupation before it qualifies under K.S.A. § 60-2304(e). The Supreme Court of Kansas has held that tools of the trade used in a secondary occupation are not exempt under Kansas law, and this Court therefore defers to that interpretation.[22]

Because the debtor's primary occupation was that of a car salesman, the property used (or to be used) in his job as a fishing guide were not exempt.

---

[19]*See Eastman v. Union Pacfic R. Co.*, 493 F.3d 1151 (10th Cir. 2007) (applying the principle of judicial estoppel to debtors who had taken inconsistent positions in legal proceedings to bar them from advancing a claim). And Debtors' failure to provide any more recent receipts showing the use of the property after February 2007, when they were able to produce older receipts for the time prior to Mr. Wilkinson's full-time employment with Mid_States, further corroborates this point.

[20]The Court also notes that the inconsistent position taken by Debtors could lead to a plethora of other issues for Debtors, most of which would come with much more severe consequences than simply losing an exemption.

[21]324 B.R. 133 (Bankr. D. Kan. 2004).

[22]*Id* at 137.

9

Debtors contend that the facts of this case differ from those in *Cooper* on one critical point. Debtor's primary occupation is that of a stone-crusher, and both his primary job and side job fall under that same occupation, which was not the case in *Cooper*. According to Debtors, the property clearly falls within the language of K.S.A. 60-2304(e). The Trustee responds by claiming that because the skid loader and red iron are used as a part of Mr. Wilkinson's primary employment at Mid-States, he should not be allowed to exempt the property that is used in his side job.

The Court finds that the facts of this case do distinguish it from *Cooper*. In this case, had Mr. Wilkinson's side business been anything other than the same type of work that he performs at his primary employment, then the Court's holding in *Cooper* would clearly have applied. In other words, if Mr. Wilkinson worked as a stone-crusher at Mid-States as his primary occupation, and then worked as an automobile mechanic on the side, the tools used in that side job would not be exempt under *Jenkins*. Although it seems fundamentally unfair to hold that a person whose side job is the same as their primary job can exempt the tools used in that side job, while also holding that a person whose side job differs from their primary job cannot exempt his or her tools used in the side job, that <u>may</u> be what is required by the Kansas tools of the trade exemption.

The parties have not cited any case by the Kansas appellate courts, or other courts interpreting Kansas law, that have taken the position articulated by Debtors in this case. Because the Court has already found that the property in question does not qualify for the tools of the trade exemption based upon the fact that it is not regularly used by Mr. Wilkinson (as shown on his tax returns and bankruptcy schedules), the Court does not need to decide this issue at this time. The Court declines to issue what would constitute an advisory opinion on this important area of Kansas law.

### III. CONCLUSION

10

Case 09-41059    Doc# 55    Filed 03/05/10    Page 10 of 11

For the reasons set forth above, the Court finds that the Trustee's objection to Debtors' claimed exemption under K.S.A. 60-2304(e) should be sustained as it relates to the skid loader with trailer and the red iron. Debtors consistently reported on their tax returns and their bankruptcy schedules (under penalty of perjury) that Mr. Wilkinson does not earn any extra money from this side business, and they are estopped from taking a different position now when the contrary position would benefit them. Because the property is not regularly used in Mr. Wilkinson's occupation, it does not qualify under K.S.A. 60-2304(e) and cannot be claimed as exempt. The Trustee has elected to not contest Mr. Wilkinson's exemption of the personal tools, and her objection will be overruled as to those tools.

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Trustee's Objection to Debtor's Exemptions[23] is sustained as it relates to the skid loader with trailer and red iron identified in Debtors' schedules. The objection is overruled as it relates to Mr. Wilkinson's personal tools, and those are found to be exempt pursuant to K.S.A. 60-2304(e).

###

---

[23]Doc. 9.